2011-1096 Mr. Hanman, when you're ready. Thank you, Your Honor, and may it please the Court. The plaintiff and patent owner, Robert BOSCH, LLC, is before you this morning to respectfully ask this Court to remand the cause to the District Court with instructions to enter a permanent injunction to stop Pylon's continued infringement of patents that have already been found by a jury and then by the Court on JMOL to be valid. This case- Now, I understand that that is probably almost a rigor that you ask for the most that you could possibly hope to get, but it seems to me that, realistically, your argument has to be that this is a matter that the District Court has to revisit, isn't it? I mean, it would be pretty unusual for us to simply direct the District Court to enter an injunction, wouldn't it, particularly in the post-eBay era? I believe that it would be unusual, Your Honor, and I'm glad I started with this point because I think it does cut right to the heart of the kind of the case that we're talking about. This is a case where the uncontested evidence on the injunction record is that BOSCH works its patents commercially to the tune of tens of millions of dollars a year in direct competition with Pylon. The two companies look for the same customers at the same time in all different channels of the market. It's not just a question of evidence. It's a question of the application of discretion that the District Court has. The District Court, I suppose it's the case, is it not, that you could have two District Courts both looking at the same set of factual evidence, and each could come out differently with respect to whether an injunction should issue in a particular case, and we could affirm them both on the grounds that neither was an abuse of discretion, which is what we have to look at in this situation. Wouldn't you agree with that? I would absolutely agree with that, Your Honor. However... In which case, the fact... I mean, you have to persuade us not only that there's no factual ground for taking a different view of matters here, but also that any decision not to grant an injunction would necessarily be an abuse of discretion regardless of what Judge Robinson might say. That's exactly correct, Your Honor, and that is exactly our position. That on this record, and I think it's important that we talk about what the record is, because this is not a hypothetical case that could go both ways without there being an abuse of discretion. On this record, it can be nothing but an abuse of discretion to deny an injunction to a plaintiff like Bosch and an infringer like Pilon under these circumstances. But the district court heard all the evidence. Why should we supplant our wisdom for that of the district court in this case? Where's the error? The error, Your Honor, is in applying, in the words of the eBay decision from the Supreme Court, we'll start, I think, with the majority, with the court's opinion in the eBay matter, the Supreme Court opinion. What the district court has done in this case, and as noted in a footnote in other cases that are continuing to develop and are not yet before this court where we're not appealed, what the district court has done is adopt expansive principles suggesting that injunctive relief could not issue in a broad swath of cases. That's language from the eBay majority opinion, criticizing first the district court decision in that case for being too exclusive about jurisdiction before coming back to the fundamental holding, which is that you do have to follow the four-factor traditional equitable test, which of course you do. And then if you look at the two concurring opinions in the eBay Supreme Court decision, which were signed by seven of the nine justices, both of those two concurring opinions talk about the history of granting injunctions upon a finding of infringement in the vast majority of patent cases, is the language of one opinion. And the second concurring opinion talks about the Chief Justice's opinion. That's the Chief Justice's opinion, Your Honor. Not entirely in sync, I think, with the majority as I read the two opinions. I respectfully disagree. I think all three opinions in that case have a common core. I think that the majority opinion, the opinion of the court says, look, you have to apply the four-factor test. It's error to not apply the four-factor test. And that's the rule, and you have to do it. I think what the two concurring opinions point out is that they did not intend this case to change the general practice of issuing injunctions in traditional cases. And this is a very traditional case with an industrial plaintiff that works its patent, an infringer that copies the product and has gone to a jury trial and lost. There's no compelling public interest in this case, like there might be in, for example, a medical device case. Some of the cases in the district court history have been things like that with coronary stents, for example, where injunctions are denied because there's a public interest in doctors having a choice of products. One of your arguments here, though, is that there were a lot of arguments and issues that the judge just never considered, like public interest, balance of hardships. Some of your arguments about price erosion, back to Judge Bryce's point, wouldn't it be better to say, well, the problem here, judge, is you didn't really exercise your discretion because you didn't consider all of the factors, and you need to go back and look at it again. Well, I think the district judge's opinion did recite all of those arguments. Well, the whole thing's a paragraph. It's one paragraph. And I am not here to defend that decision that you're on. The court said there are four things I have to consider, and then proceeded to, as I read it, really only look to the three things, one of which was that it wasn't shown to be a two-competitor market, two, that Bosch is a big company. This isn't a core part of their business, and three, that there hadn't been adequate proof of the nature of the market. That was it. Stop. Full stop, right? This is your argument, but I don't see why that constitutes a thorough assessment of all the factors that would give us insight into whether the trial judge, ultimately, after giving this close scrutiny, has abused her discretion. And that's why I think it comes back to what is contested and not contested in the record on appeal, which is the same record that was before the district judge on the injunction issue. There is no contest that the two companies are in competition. There has been no argument about public interest other than Pilon's argument that there's a public interest in continued competition. Are you asking us to adopt a categorical rule where you have a practicing entity and you have direct competitors that injunctions should always issue? Certainly not that, because there are other factors beyond irreparable harm. There's the balance of harm factor, there's the adequacy of money damages, and there's the public interest factor. And all of those things must be considered. And I come back again to the coronary stent example. Certainly, there could be cases in which there would be a strong public interest in not having an injunction issue. But I think, certainly, in the majority of cases where you have direct competitors in an industrial area like this, we have centuries of jurisprudence that say, we grant injunctions in those cases. That's what the Supreme Court pointed to. And this is a classic kind of case. And to deny an injunction on this record would represent a radical change in injunction law. And I think the district court's decision does represent that. And it's part of a pattern, as cited in our footnotes, of a developing stream of cases pointing towards requiring a two supplier market, for example. Did the bifurcation that the judge issued here, did she bifurcate discovery on damages as well? Bifurcated? Damages discovery was bifurcated. Some initial damages discovery had already been taken. But in general, yes, your honor, damages discovery was bifurcated. I should point out that on the briefing and argument, or rather, excuse me, the briefing, because it was on the papers, if I recall correctly, on the injunction issue, Infringer Pylon never asked for an evidentiary hearing, never sought discovery or sought to depose our witnesses. And they provided what they provided to the district judge in terms of declarations. So arguments about the adequacy of discovery, I think, were waived by the failure to request it. So there wasn't even an oral argument on this? There was an oral argument on the, I believe it was an oral argument on the judgment as a matter of law issues, which would have included the motion for a permanent injunction. Standing here today, I don't recall whether or how much the issue was discussed. Sort out for me. I want to follow up on Judge O'Malley's question. Where are we in the different parts of this case? It feels like there are parts of this case all over the eastern seaboard. What's happening in the district court? What's happening in this court with respect to the merits and so forth? Well, there's activity here in Washington. Which is? Which is this appeal. This appeal. This appeal. And the merits appeal, but not the damages, I take it. That's correct. The merits appeal has been filed, but not yet. I thought it was withdrawn. Was it withdrawn? It was filed, then withdrawn, right? If I can, I'll just lay out the map of where we are. We have the district judge. We had a jury trial. We had the district judge review of that jury trial on the liability issues, which did result in some changes to the judge to the jury's verdict. That happened. Well, that happened. There were some judgments as a matter of law. Certain claims are valid now that were not valid after the jury's verdict. There was, at the time, and this injunction was denied. We filed this interlocutory appeal specifically on the injunction issue. The merits of the liabilities issues were not yet right because, among other things, not only the damages and willfulness was outstanding, but inequitable conduct issue was outstanding. The judge has since then decided the inequitable conduct issue against bylaw and found that there was no inequitable conduct. This appeal proceeded and was briefed. The initial appeal of the merits, which we filed as a precautionary notice to ensure that we didn't miss our deadline, was deactivated per our request because of the outstanding issues in the district court. After the district court decided the inequitable conduct issues, both parties again filed notices of appeals of the merits. And Bosh's notice, again, indicated that it was a precautionary notice of appeal. We have filed a motion to dismiss the merits appeal that is now pending on the grounds that the merits issues are not final. There having been no damages. With no damages, how could they be? Correct. That's our argument in the motion to dismiss in any event, Your Honor. So nothing is happening right now in the district court. If our motion to dismiss is granted, then the case will go back to the district court for damages and willfulness determination. In the meantime, this adjudicated infringer is continuing to sell. And the irreparable harm that we pointed to before the district judge and in our papers to this court continues unabated. Not just the kind of irreparable harm with loss of customer share and those kinds of things, but as well, we pointed to in our briefing below, in our briefing to the district court, and here, evidence that Pilon will not be able to satisfy a judgment when it is ultimately added up, issued, and appealed. How can you really make a determination as to whether money damages are sufficient if you haven't figured out what the money damages would be? We know right now that money damages cannot be sufficient because of the effect on the marketplace of the kind of infringement that we have here, where a pioneering company creates a new kind of product, an entirely new category of product, and sees its prices and margins fall off a cliff as a result of infringement from companies like Pilon. And that has all the effects that we laid out in our papers, not only of irreversible price erosion, loss of market share, loss of customer opportunities, loss of brand awareness, and the lack of reward to DeBosch for its substantial research investment. Is it your view that the district court did not take those factors into consideration? My belief is that the district court applied a per se rule requiring, for example, a two supplier market, and therefore did not. What did the district court do with all the other factors, like price oppression, loss of market share, loss of market opportunities? I don't know what consideration the district judge gave them. I know the district judge mentioned things like that. What did she say in her opinion? Yes. What she said in her opinion, she recited the arguments that both sides made. And then what she held is that this is not a clear case of a two supplier market. And she further held that Bosch manufactures other products besides wiper blades. And therefore, in light of these factors, and she says the failure to define a relevant market, which I read as being related to the two supplier problem. Should we reverse on the basis that the district court did not articulate a rationale or reasoning with respect to all these other factors? I think that would be a sufficient grounds for reversal, yes. But I think that on this record, it's important that an injunction be entered. And then Pilon has argued, well, the injunction should be stayed. And that's an application Pilon should make to the district court. Injunction should be entered, as in every case like this. And if Pilon would like to seek a stay of the injunction, Pilon should file a motion to do that. The district judge may allow that, perhaps on a posting of a bond. That would at least give Bosh some financial security, although it couldn't cure the other kinds of non-monetary harms that we're talking about. And I think that ought to be the correct procedure. Excuse me. I'm sorry. Go ahead. So is it your argument that if we should reverse? Yes, Your Honor. Should we not remand this and have the district court consider these factors if the court failed to do that? I think the district court certainly will need to take up the issue of the proper scope of the injunction, for example. But any result other than, if this court remands to the district judge with instructions to consider all the factors and write a more detailed opinion, any result other than an injunction is going to be reversible error. And it's going to be not just reversible error, but error that must be reversed, because it will be an abuse of discretion. There simply cannot be, on the record that we have here, there cannot be a finding within the court's equitable discretion that no injunction should be entered. You mentioned the factor of Pilon's ability to satisfy a judgment monetarily. Now, there's been no finding as to that. That strikes me as the kind of issue that would be very hard for us to reach a concluded view on without either doing some guessing about whatever it is is in the record, and ultimately, perhaps, engaging in appellate fact finding. That's an intensely factual kind of question. But you say, never mind? I don't say never mind, Your Honor. What I say is that in a case where you had contested expert opinion, for example, or even contested fact testimony, then Your Honor is absolutely correct. In this case, we submitted evidence that Pilon would not be able to satisfy the judgment. Pilon responded with nothing, and it's entirely within Pilon's control to, for example, put in a declaration in the district court that says, I have $10 million. I can pay. And they didn't do that. They put in not a single piece of evidence about their financial condition, which I think is telling. Very well. Why don't we hear from the other side, then? Mr. Hillier, we will reserve, Mr. Hanneman, we'll reserve a couple of minutes of rebuttal for you since we asked you a lot of questions. If it pleases the court, what I'd like to do is take a cue from some of the questions and discussions we've had already. The standard has already been enunciated, and it's been, I think, correctly observed on several occasions, both by the panel and Botch's counsel, that the decision to deny injunctive relief is within the discretion of the district court, primarily because- Let me just make sure, you're withdrawing that crazy jurisdictional argument, correct? Well, I can address that now, if you'd like. Yeah, I mean, I don't know how you could go there when it's so clear that that's not the law. Well, here's the nuance that we're presenting to the court. The case is idiosyncratic in at least two respects. It's a bifurcated case in which you have a request for permanent injunctive relief without any discovery taken, without any expert testimony, which is an oddity, which I think in a minute I'm going to dovetail that into the sufficiency or lack of sufficiency of the evidence. But the rules of civil procedure are what they are. I mean, you're relying on case law that clearly has been overruled. That goes to my second point. By virtue of the additional inequitable conduct proceeding that took place at the district court, you have the appeal of an injunction, which is predicated on an infringement finding, on a different track, timing-wise, than the appeal on the merits. And so to telescope the issue, what we're asking the court to do is to at least wait on the decision on the injunction until the merits are in front of it. And we go to the case law to which you're referring for the premise that intermocketory appeals should be viewed narrowly, and that the only reason not to wait, if you will, is the body of case law that has already suggested that you may do so unless there is a severe consequence that's going to result, or the issue can't be revisited later. That's not the way you briefed it, though. You briefed it that we had no jurisdiction. And then you alternatively briefed that we should wait. Right? Are you giving up the no jurisdiction issue? We agree that the court has jurisdiction under a strict ruling that where there is an express order, whether it's granting or denying an injunction, that according to that body of case law, the court has jurisdiction. Now, if I may, Your Honor, since you've asked me why we raised it, a review of that body of case law, and I don't want to spend too much time on this, if the court isn't interested in it. And you can stop me if you'd like to. Briefly, I think. So briefly, a review of that body of case law reveals that you have multiple moving parts. You have preliminary versus permanent injunctions. You have grants versus denials. Sure. And you have express versus. You have all sorts of modification requests, tinker with, and so forth. And there's some of those that are not deemed to be sufficient to warrant having a court of appeals jump in every three days when somebody walks into the district court and says, I want you to do this, I want you to do that, and the district court says no. So there is a class of cases. But we all agree. Grant, deny, appeal. I agree with that. If I may, Your Honor, I beg the court's indulgence only to add, and we may not reach this issue in this case, but when you have a situation that presents itself like this one, an express order, while it's certainly a clean rule, and as you've aptly stated in less than five seconds, that you can apply it easily. All express orders are not necessarily created equal. So you may take jurisdiction and decide this case tomorrow. That's certainly within your province. And you may choose to do that. What we're suggesting, though, is that you've got a merits appeal that hasn't caught up yet. So it may turn out that, and we, of course, believe it will, that there'll be no grounds for an injunction because the infringement finding is going to go away, in which case, a primary. If it's your preliminary injunction, that would be exactly the position we'd be in. I beg your pardon, Your Honor, I didn't mean to interrupt. If this were a preliminary injunction appeal, of which we would take cognizance of, we do every day, that would be exactly the situation. We wouldn't have had a judgment, obviously, because it's preliminary. I agree. And it is a form of preliminary injunction, you could say. I agree with that. I agree it's sort of a hybrid. Because it's meant to govern the rest of the case. But with a pretty substantial likelihood of success on the merits, they won, right? Well, I can't concede that point, Your Honor. Of course, I believe strongly in appeal. All I'm saying is that, even as a matter of judicial efficiency, simply waiting, and I don't think it's a long period of time, because we've already talked about the fact that that briefing is in front of the court. So that might be a brief period of time. But you asked the district court to wait on this issue, and she refused. I don't believe that. In your briefing on the injunction, you said it's premature, don't do this now. Oh, agreed, because there had been no damages discovery. So what Pilon was faced with, if you will, was being in the unenviable position of taking declarations which raised new evidence, without being able to take discovery. No depositions, no expert reports. So what you have is you have corporate representatives from Bosch opining on conclusions that we can't vet. We have no ability to. Let me ask you that, speaking of those conclusions. You don't even, in front of us, not even in lawyer argument, contend that you could pay a damages judgment. There's nothing. You never once said, to the district court or to us, that don't worry, we'd be able to sustain a damages judgment. Well, Your Honor, respectfully, it's not our burden to show that we can pay. No, but it can be helpful to your case if you do. Well, this may not be your burden, but when no response comes, and the claim is made that the party cannot pay, it leaves the court with the feeling that there may be a problem here. Well, Your Honor, what we've done, and what I'd like to get to in a moment, because I think it's really the heart of the correctness of the district court's order, was point to the insufficiency of the evidence. The point you're referring to was a declaration by a Bosch representative that took the publicly available information on the parent company, which was scant at best, and called out a loan that was taken some time ago, looked at the percentage rate applied to that loan, and then made the leap. But the judge never said that was inadequate. The judge didn't even address whether or not a damages remedy could be satisfied. She just ignored that. She just ignored that point, didn't she? Certainly not in the order. I agree with Mr. Haneman, though, that the order reflects an appreciation for all of the evidence in front of the court, and the court deemed it to be insufficient. And we agree with that, because if somebody calls out a piece of information and makes several logical leaps, you're suggesting that Highline should say, we should rise to the bait when it's not our burden, and say, well, here's all of our evidence as to why we can't. No, no, no, no. Why did the court say that that particular piece of evidence was insufficient? No, that's certainly not in her order, Your Honor. What I'm suggesting, though, is that we believe that it's in our province, as the party that doesn't bear the burden, when somebody presents the evidence in the way it was presented in this case, which is through lay opinion, sort of a contradiction in terms, a lay witness, opining, making conclusions based on one data point without an expert report, without any issues about the qualifications, no ability to cross-examine, that we felt the best way to address that was to say that that's something the court shouldn't consider. And we said the reasons were. Can you give us any comfort, as you stand here today, that your client can satisfy a damages judgment in the tens of millions of dollars and pay a going forward royalty? I can offer insurances to the extent that I don't want to offer new information in front of the board, but I will tell you this, if you're willing to consider the point, the loan that they're pointing to and the one piece of information has been satisfied. It doesn't exist anymore. And this highlights the problem with statements being made that are no longer timely, where we have no opportunity to cross-examine or offer evidence, because we are not at that stage of the case yet. And it was cautious. Did you not have just presented evidence at that point in time on your ability to pay any judgment? I mean, aren't these factors that are under your control and you made a decision for whatever reason that you were not going to present that information, thereby forcing Bosch to rely on publicly available information? But Your Honor, respectfully, what you're asking us to do is in a case where that information hasn't even been exchanged yet. I mean, this is an oddity. You've got a situation where there's no information passed between the parties at all, and suggesting that Pilon should now offer new evidence under the auspices of what is a J-MAL motion or being offered in conjunction with J-MAL after the case on liability is over. Nobody's touched the images, even talked about the issues. But you're responding to the fact that they have the right to exclude. They've got a patent that's been found valid and infringed. And your response is, there is an alternative remedy that would be more appropriate and sufficient. So therefore, there's no irreparable harm. Why don't you have the burden of at least going forward with evidence that that alternative remedy is a meaningful one? I'm not sure that I followed you. When you've stated our position, I beg your pardon, but I didn't know. They're asking for the right to exclude be enforced. They've got a judgment of infringement and validity. And you're saying, doesn't need to be enforced, because they're not going to be irreparably harmed, because there are alternative monetary remedies. Why wouldn't you have the burden of at least going forward with evidence that there is such an alternative remedy? Well, I think our response is to argue, as we did to the district court based on the evidence that was available, to make argument and then live with the decision that Judge Robinson ordered, which we now have the ability to present to this court, which should be reviewed as an abusive discussion. That's the evidence that was available. I mean, if Pilon had a $30 million CD, you could, that's information that would be available to you. You could introduce in your pleading in opposition to a motion for injunction, you could introduce affidavit of Gregory Hillier, in which you would attach a copy of the $30 million CD, and presumably you'd be done. And we wouldn't be here arguing about who has the burden of proof and whether you had access to evidence. You had access to that kind of evidence. You decided not to put it in. Now, you may be right that that isn't technically your burden, but it certainly is a factor that both the district court and we have to look at in deciding whether or not there's a problem here with respect to the alternative remedy that, as Judge O'Malley has pointed out, is what you're pressing on the district court and ultimately on us. Well, respectfully, whether or not we decided to present that information or not is something that we can and are debating. The question to be decided is whether or not the district court, whether considering that information or not considering that information on the order we have in front of her, was wrong to reach the conclusion that she did. What I'm suggesting to the court is that the additional evidence, to use that expression, relied on by Bosch is reflected in the district court as being absent of sufficiency of evidence for there to be irreparable harm. But the only evidence that she said was missing is that there wasn't sufficient evidence of a two-player market. I disagree with that, Your Honor. Let me try to just back up a moment and tell you why. The district court set out the proper legal standard. I don't think anybody's disputing that, even though they've set an error of law, that we're operating under the right standard under eBay. The court went on to set out the respective positions of the parties and then conclude that Bosch had failed to meet its burden for a permanent injunction based on its lack of showing irreparable harm. And it went on to say that it failed to provide an overview of the identity or existence of additional competitors and the non-core nature of Bosch's products. The remark that it wasn't a two-supplier market was not the conclusion or an application of a categorical rule. And that's because the reason the court mentioned the things that the court did was because it was Bosch that brought those to the court and said, here's how we're being harmed. I'll enumerate them for you, as I think we've already covered. Loss of market share, loss of customers, loss of business opportunities, loss of goodwill, loss of brand loyalty, price erosion, all the bells that you would want to ring to show irreparable harm. And the court looked at Bosch metaphorically and said, OK, what do you got? You say you're suffering all those things. You've got a declaration that does little more other than state that. And the court said, OK, where's the evidence? The evidence. Now, there's scores and scores of cases that both parties have cited. And they're all factually specific. They all talk about competitors. Some touch on the things I've just enumerated. But in every single situation in which somebody is claiming irreparable harm, there is evidence to support. Now, I think you can gather that because we don't have damages discovery, that's one of the reasons that this evidence isn't available. But regardless, the bottom line is that the court's decision was directly in response to the issues that they raised, saying, hey, we're being harmed. Look at us. Loss of market share, loss of business opportunity. The court said, well, wait a minute. You haven't told me what the market is. And from the look of it, you've got a multi-tiered market, multiple players who, by the way, share multiple products, some of which have the past and future. She never discussed price erosion. She didn't discuss the fact that it was, in fact, a new market. She didn't discuss copying. She didn't discuss balance of hardships. I mean, I don't know how you can say that that one sentence means that she addressed every single argument that they presented. No, I'm not suggesting that she addressed every argument. But telescoping on the irreparable harm, those are the factors that they talked about. And what the court was saying with its remark about it not being a two supplier market is that at least there, if you're not going to say anything other than I'm losing market share, at least when you have two people, a loss to one is a gain to the other. So what the court was recognizing was not categorical rules, but that you better come forward with more information if you expect me to glean that you've lost market share just because you say so. How could you possibly say that something is not irreparable harm if you don't determine the adequacy of an alternative remedy? You mean to the money damages issue? Yes. There was no discussion of what a going forward royalty might be. There was no discussion of the ability to satisfy a going forward royalty. There was no analysis of that. Well, I don't. I mean, in some respects, the money damages adequacy is the other side of the penny of irreparable harm. One is sort of part and parcel of the other. In other words, when you're concluding that there's no irreparable harm, you're sort of matter of factly saying that money damages are.  she had absolutely no evidence on which to conclude that money damages would be adequate. Well, she doesn't discuss it in the order. We certainly argue. I read all of the submissions that you made to her. There's not anything in there in which you said the money damages would be adequate. Well, I respectfully disagree. But you said it. Some of those are confidential, so I don't want to cite them specifically. But there was no evidence that you presented. Have we overlooked some evidence that you presented? When you refer to confidential materials, are you, was there evidence on that issue? There was. There was one piece of evidence that I don't want to articulate because it's submitted. And that was in connection with, give us the pleading that it was filed with so we can, is it in the appendix? It's in the joint appendix, the confidential joint appendix. OK, and it's in connection with what pleading? Our response brief. Well, in the joint appendix, it was in your response brief to a motion for an injunction. Correct, in our opposition brief. All right, well, we'll take it. And there was also another piece of that information that didn't take the form of an exhibit, but was in a declaration that was submitted before the district court in which we did, we were forthcoming with certain facts that spoke to issues of competition, the market. Well, we're really looking, I think right now we're focusing down on the question of adequacy of the monetary damages relief. OK, I think if you have nothing further, we'll move on. Thank you. And Mr. Haneman, a couple of minutes of rebuttal. Thank you, Your Honor. First, I wanted to point out that while it's true we don't have complete or updated damages discovery in this case, there is evidence in the record. And it's cited in our brief on page 22 of our opening brief in appendix page 551 of pylon sales levels. There's similar evidence of Bosh's on sales levels, but we do have numbers for pylon sales up through a part of 2009, which are in the tens of millions of dollars. So we have some damages context for assessing that there could potentially be a large damages award. And there's also specific evidence in the record of competition, direct competition between these two companies for the very same customers. And that's cited throughout our brief and in the appendix, various discovery documents, witness testimony, and that kind of thing. To remand this case with instructions to the district court to reconsider in general, rather than reversing as Bosh requests, the first effect of that would be further delay. This case was filed in August of 2008. The infringement has continued all that time. And on this record, there's no reason for further irreparable harm to build up. Irreparable harm has already occurred, but that's no reason to make it worse. And I think another way of making the point about reversal is that to send it back for further consideration would, on this record, be a formality. And it would be a formality that would take some time for the judge to review. When you say a formality, you're saying that Judge Robinson would inevitably reach the same result? I am not saying that, and I'm going to come to that issue in a second, Your Honor. What would it be, a formality? It would be a formality, because any decision other than entering an injunction would be an abuse of discretion, because this record does not support it. We would only send it back if we decided you're wrong about that. OK. Do you mean, other than that, that it would be a formality? No, no, no. If you agree that, on this record, a reasonable, equitable decision maker would have the discretion to deny an injunction, then I understand Your Honor's point. We disagree, obviously, about that point. And if there were to be a remand, I think it's important for this court to take this opportunity to address the standard under eBay, and in particular, to address the developing threat of cases, talking about two supplier markets and whether a product is a core product. Because for a company like Bosch to be an injunction, because it makes things other than windshield wiper blades, which, by the way, there is testimony that the beam blades are a core part of Bosch's windshield wiper business. But the fact that Bosch is a large industrial company that is successful in several different areas doesn't mean they shouldn't get an injunction in this area. And I think that's important for this court to note with respect to these development cases. And similarly, the fact that there are other companies selling beam blades, perhaps, is really also not a critical factor in determining whether an injunction should issue. If you issue injunctions only in two supplier cases, you are changing a lot of injunctions. Is it material if you operate in a different channel of distribution than Pylon? If there were not actual competition between the companies, I think that would be material. But as I indicated, Your Honor, we have direct evidence in this case that both companies sell or attempt to sell to the same people. At the original equipment manufacturer and supply level, there's evidence that both companies have sold or tried to sell to Ford, Nissan, and Toyota. At the specialty retailer level, there's evidence in the record, specific evidence, that both companies have sold or tried to sell to AutoZone, Pep Boys, Advance, NAPA, CarQuest, and O'Reilly's. And at the mass market level, there's a great deal of evidence about the competition for the Walmart business. This is not a case where the companies do not compete or compete only in different channels. They are offering their goods to exactly the same customer base. And on a record like that, that's why I say it ought to be a formality. But if it's not, then at least I think we need to clarify that two supplier market is not required in that four or five. Is there any evidence on the record as to the value of the overall beam wiper blade market? No, there is evidence of Pylons, the quantum of Pylons sales, and the quantum of Bosch's own sales. There's evidence that Bosch was the first company to sell successful products, and so had 100% of the market years ago. And as a result of the infringement, has less. There's also, as you can see from the statement of related cases, a number of other infringement cases pending on this portfolio. How about evidence on domestic consumption or domestic shipments of this particular product? Industry-wide? Yes, the total numbers are not on this record. Very well. Thank you, Mr. Hammond. The case is submitted.